DECISION AND JUDGMENT ENTRY
This case is before the court on appeal from the Ottawa County Municipal Court. Following a trial, the jury found appellant Brian L. Binder guilty of operating a vehicle while under the influence of alcohol in violation of R.C.4511.19(A)(1). For the reasons that follow, this court affirms the judgment of the trial court.
The facts relevant to this appeal are as follows. On or about April 10, 1998, appellant was arrested for driving under the influence of alcohol. The case proceeded to trial in the Ottawa County Municipal Court on April 13, 1999. The state of Ohio's evidence against appellant was that appellant was stopped by State Trooper Nathan P. Gross when Trooper Gross observed appellant weaving in his lane, crossing the center line, and weaving past the right-side lane marker. Trooper Gross testified that when he approached appellant's vehicle, he smelled an odor of alcoholic beverage coming from appellant's breath, and he noted that appellant's speech was thick and slurred and at times difficult to understand. Trooper Gross also testified that he administered the usual field sobriety tests to appellant and that appellant failed each one of them.
Appellant's defense at trial was that, to the extent that he performed poorly on the field sobriety tests, windy conditions on the night of his arrest contributed to his poor performance. Appellant also testified that his passenger, who was drunk and passed out on the front seat of the vehicle, had vomited on him some moments before appellant was stopped, and this, according to appellant, contributed to the smell of alcohol in the vehicle. Appellant also testified that he was driving his passenger's pick-up truck, a truck he had never driven before, and the wind that night was pushing the truck, making it hard for appellant to control it. Appellant testified that he consumed three beers in a three-hour period.
At trial, appellant testified that he refused to take the breathalyzer test. On cross-examination by the prosecuting attorney, the following exchange took place:
 "Q: Did he [Trooper Gross] give you the opportunity to take a breath test?
"A: Yes, he did.
"Q: And you didn't take it?
"A: No, I didn't.
"Q: You didn't want to prove your innocence this way?
"A: No, I guess —"
At this point, defense counsel objected, and the trial court instructed the jury to disregard the question about whether the appellant wanted to "prove his innocence."[1] Counsel then approached the bench for a bench conference. Defense counsel moved for dismissal based on prosecutorial misconduct, arguing that the prosecutor improperly commented on the appellant having to prove himself innocent when, in fact, he is presumed innocent. The prosecutor acknowledged her error, and the trial court apparently denied the motion.[2] At this time, the defense requested that the judge give further instruction to the jury regarding the burden of proof and the presumption of innocence, but the trial judge's response is noted as "inaudible" on the record. After both sides had rested, and before closing arguments, the trial judge instructed the jury on the law, including an instruction that the state has the burden of proof, that the defendant is presumed innocent until proven guilty beyond a reasonable doubt, and that the defendant is not required to prove himself innocent.
During jury deliberations, the jurors sent out a question for the judge that read: "* * * would it be possible to find out the actual weather conditions on April 10th, wind direction and speed." At this point, the defense renewed its motion to dismiss, arguing that the jury's question indicated that the jury was confused about the burden of proof. The judge again denied the motion to dismiss, noting that he had given a curative instruction at the time the offending question was asked and that he had instructed the jury about the burden of proof and presumption of innocence at both the beginning of the trial[3]
and before closing argument. The court then noted that he would respond to the jury's question by writing underneath the question itself, "The jury has the best evidence upon which to render a decision." The defense then moved for another curative instruction, and the judge denied that request. Following deliberation, the jury found appellant guilty of driving while under the influence of alcohol in violation of R.C. 4511.19(A)(1). On appeal, appellant presents one assignment of error:
 "APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL AS A RESULT OF PROSECUTORIAL MISCONDUCT."
Prosecutorial misconduct occurs when the prosecutor makes a statement that is improper and the improper statement causes prejudice to appellant. State v. Smith (1984), 14 Ohio St.3d 13,14; State v. Ross (Nov. 13, 1998), Erie App. No. E-97-053, unreported, discretionary appeal not allowed (1999),85 Ohio St.3d 1440; State v. Rice (May 1, 1998), Lucas App. No. L-97-1154, unreported.[4] To determine if the alleged misconduct resulted in prejudice, an appellate court should consider the following factors: "(1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant." State v. Braxton (1995), 102 Ohio App.3d 28,41, discretionary appeal not allowed (1995), 73 Ohio St.3d 1425; State v. Rice, supra. Additionally, the appellate court should consider whether the alleged misconduct was "an isolated incident in an otherwise properly tried case." Braxton,102 Ohio App. 3d at 41. A reversal for prosecutorial misconduct is not warranted unless it is clear beyond a reasonable doubt that the outcome of the trial would have been different but for the misconduct. State v. Smith, 14 Ohio St.3d at 15; State v. Vallejo
(Oct. 18, 1999), Lucas App. No. L-98-1090, unreported. In this case, the prosecutor's question to appellant about proving his innocence was clearly improper. Therefore, the only question is whether the improper question was prejudicial to appellant.
First, an appellate court is to consider the nature of the remarks. State v. Braxton, 102 Ohio App.3d at 41. Here, the prosecutor's question about appellant proving himself innocent was potentially prejudicial to him as it could have resulted in juror confusion about the burden of proof in criminal cases. Second, we are to consider whether defense counsel objected, id. and we note that defense counsel strenuously objected. Third, we are to consider whether corrective instructions were given by the trial court. Id. The record is clear that, at the very least, the judge gave a corrective instruction that the jury was to disregard the offending question. The judge also, on at least two other occasions, instructed the jury as to the correct burden of proof and presumption of innocence in criminal cases. In terms of the potential impact of the offending question on the jury, it is worth noting that the correct instructions well-outnumbered the one improper question.
The fourth factor that the court is to consider is the strength of the evidence against the defendant. Id. Trooper Gross testified unequivocally at trial that appellant was stopped for weaving, that he smelled of alcohol, that his speech was thick and slurred and at times difficult to understand, and that he failed all of the field sobriety tests. Appellant does not dispute this testimony; he only offers alternative explanations for the officer's observations. Appellant admits he was drinking on the night of his arrest. Finally, we are to consider whether the alleged misconduct was "an isolated instance in an otherwise properly tried case." Braxton, 102 Ohio App.3d at 41. Here, the prosecuting attorney asked one improper question. She acknowledged that it was improper and indicated that it was inadvertent. Appellant has not alleged any other improper questions or comments. Clearly, then, the alleged misconduct was an isolated incident. Compare State v. Smith, 14 Ohio St.3d at 14
(prosecutor made approximately six improper statements to jury).
After considering all of these factors, the ultimate question is whether it is clear beyond a reasonable doubt that, but for the improper statement, the outcome of the trial would have been different. Smith, 14 Ohio St.3d at 15. On this point, appellant contends that the jurors' question to the judge indicates that they were confused about the burden of proof. However, that is not the only inference that can be made from the jurors' question. Other plausible inferences can be made as well. Based on the record of the trial, we cannot say that it is clear beyond a reasonable doubt that the outcome of the trial would have been different if the improper question had not been asked. Accordingly, appellant's sole assignment of error is found not well-taken.
On consideration whereof, we find that appellant was not prejudiced or prevented from having a fair trial, and the judgment of the Ottawa County Municipal Court is affirmed. Appellant is ordered to pay the court costs of this appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
MELVIN L. RESNICK, J., JAMES R. SHERCK, J., and MARK L. PIETRYKOWSKI, J., concur.
[1] The transcript was transcribed from a videotape. Apparently, the videotape was unclear in several spots, as the court reporter noted "inaudible" in numerous places in the transcript. The trial court's instruction to the jury following the above-quoted exchange is peppered with "inaudible" notations, but it is clear from what is transcribed that the judge gave a curative instruction to the jury to disregard the prosecuting attorney's question. Any further instructions that the judge gave at this time are noted in the transcript as "inaudible." However, the trial judge is recorded later in the transcript as saying that he instructed the jury after the offending question that the state has the burden to prove the defendant's guilt beyond a reasonable doubt and that the defendant is presumed innocent. Transcript, p. 124. Counsel did not object to the judge's recollection of his instruction.
[2] Again, the videotape must have been unclear because most of the judge's remarks during this bench conference appear in the transcript as "inaudible," and the judge's denial of the motion to dismiss is not clearly noted in the record. Nevertheless, the trial continued, and later in the trial when defense counsel renewed his motion to dismiss, the trial judge responded, "So I again will deny the motion to dismiss * * *." Transcript p. 125. Therefore, it is clear from reading the transcript as a whole that the judge denied the initial motion to dismiss.
[3] See Transcript, p. 16.
[4] The test for prosecutorial misconduct as stated by the Supreme Court of Ohio in State v. Smith, 14 Ohio St.3d at 14, was stated as the test for misconduct in closing argument. However, no good reason exists to distinguish between prosecutorial misconduct in closing argument and prosecutorial misconduct in questioning. In fact, this court has previously applied the Smith
test to alleged misconduct in questioning. See State v. Ross,supra; State v. Rice, supra.