OPINION
{¶ 1} Defendant-appellant David Lama appeals his conviction entered by the Licking County Municipal Court, on one count of assault, in violation of R.C. 2903.13, following a jury trial. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On June 4, 2003, Patrolman Brian Thomas of the Newark Police Department was dispatched to the Beachfront Tanning Salon at 1081 North 21st Street, Newark, Ohio. Det. Kenneth Ballantine was already at the scene. Upon his arrival Patrolman Thomas observed Ashley Rossiter lying on the parking lot, surrounding by several people. Patrolman Thomas was informed by several people they had witnessed appellant pick up Rossiter and slam her to the ground. Appellant was arrested and charged with assault.
 {¶ 3} Appellant appeared before the trial court on June 6, 2003, and entered a plea of not guilty to the charge. The trial court released appellant on his own recognizance and ordered him to have no contact with Rossiter. The matter proceeded to jury trial on June 15, 2004.
 {¶ 4} Ashley Rossiter testified she was working at the Beachfront Tanning Salon on June 4, 2003, when she observed appellant and Kristopher Montgomery drive by her truck, continue on, and then turn around. Appellant and Montgomery stopped in front of the store. Rossiter believed they had thrown something at her truck, so she went outside to assess the situation. While in the parking lot, Brandon Stokes, Rossiter's boyfriend arrived. Appellant and Montgomery pulled into the parking lot and parked behind Rossiter's car. Appellant exited the vehicle and started to yell at Stokes. As Stokes and appellant exchanged words, Rossiter stepped between the two men and told appellant to leave.
 {¶ 5} Appellant spit in Rossiter's face, then ran toward his vehicle. As Rossiter chased after him, appellant turned around, picked her up, and threw her on the ground. During his testimony, Stokes gave a similar account of the incident.
 {¶ 6} Kelly Amos, a customer at the tanning salon, testified she was at the salon on the day of the incident and observed a confrontation between appellant and Rossiter. Although Amos was inside the salon at the time, she could tell appellant and Rossiter were arguing by the looks on their faces. Amos testified appellant turned away and Rossiter followed him. Appellant turned back toward Rossiter and words were exchanged. This occurred several times. "The next thing I knew . . . Ashley was up in the air . . . in the front of the gentlemen and she was basically thrown to the cement of the parking lot." Tr. at 41. Although Amos could not see what part of Rossiter's body appellant picked up, she saw Rossiter "was very high up in the air . . . above the vehicles and the next thing I knew she just kind of bounced off of the cement of the parking lot." Id. Amos further testified Rossiter landed in front of appellant. On cross-examination, Amos explained she could not see exactly how Rossiter got into the air because Rossiter and appellant were behind a truck and Amos could only see that Rossiter was up in the air.
 {¶ 7} Appellant testified he and Kristopher Montgomery were driving to Burger King on June 4, 2003, when they passed the salon. Montgomery noticed a black truck with orange racing stripes in the parking lot. Montgomery believed the owner of the truck had vandalized his vehicle. Montgomery turned into the parking lot in order to record the plate number. Appellant testified the manager of the tanning salon came outside and instructed appellant and Montgomery to leave the premises. Appellant stated they complied with her demand.
 {¶ 8} While driving through town shortly thereafter, Montgomery and appellant observed Brandon Stokes driving the black pickup truck in the opposite direction. Montgomery believed Stokes made a gesture which indicated he (Stokes) wanted Montgomery to follow. Montgomery followed the pickup truck into the parking lot of the salon. Appellant and Montgomery observed Stokes standing outside his vehicle, holding a glass bottle. Because appellant believed Stokes was getting ready to throw the bottle at Montgomery's vehicle, appellant exited the vehicle before Montgomery had stopped and confronted Stokes. While appellant and Stokes were speaking, Rossiter stepped between them, and began shouting and poking him in the chest. In response, appellant spit in Rossiter's face. Appellant turned to leave, but Rossiter followed him. Appellant turned to appeal to Rossiter not to hit him. As she ran toward him, appellant simultaneously lowered his shoulders and brought his hands up to deflect her blows. Rossiter hit his tucked shoulders, "Came up and over and landed on the ground." Tr. at 72.
 {¶ 9} Kristopher Montgomery also testified at trial. Montgomery recalled appellant running toward his vehicle and Rossiter coming after him. Thereafter, Montgomery saw appellant bend over in a protective stance and Rossiter roll over appellant's body and fall on her back.
 {¶ 10} After hearing all the evidence and deliberations, the jury found appellant guilty as charged. The trial court sentenced appellant to a jail term of 30 days, which the trial court suspended. The trial court also ordered appellant to pay a fine of $150 plus costs.
 {¶ 11} It is from this conviction appellant appeals, raising the following assignments of error:
 {¶ 12} "I. The trial court committed plain error when it overruled appellant's trial counsel's objection to a false statement made by the prosecuting attorney during closing arguments.
 {¶ 13} "II. Remarks made by the prosecuting attorney during closing arguments constitute prosecutorial misconduct, which deprive appellant of a fair trial as guaranteed by the fourteenth amendment to the united states constitution and comparable provisions of the ohio constitution.
 {¶ 14} "III. Appellant's trial counsel failed to provide appellant with effective assistance, which deprived appellant of rights guaranteed to him by the sixth amendment to the united states constitution and comparable provisions of the ohio constitution."
 I, II {¶ 15} Because appellant's first and second assignments are interrelated, we shall address said assignments together. In his first assignment, appellant contends the trial court committed plain error in failing to overrule his objection to false statements made by the prosecutor during closing arguments. In his second assignment, appellant maintains he was deprived his constitutional right to a fair trial as a result of prosecutorial misconduct.
 {¶ 16} These assignments of error center around the following statement made by the prosecutor in his rebuttal closing:
 {¶ 17} "Ladies and gentlemen, since the state has the burden of proof, I get as they say, one last shot to make my arguments in rebuttal. Again I think that you need to remember a little bit about . . . think back to Kelly Amos's testimony. She said . . . although she said the word chase, she said it was really not a running away it was always back and forth. They were at fast pace at best. She didn't say they were running . . . and she said . . . during that time she had pretty much kept her view of this what's going on as they were * * * continuing away from her. She said * * * she couldn't tell where she was held, but she was held straight up in the air is what Kelly Amos said. Not just falling over someone's shoulder and flipping over like the defense wants you to say. She says that she was held up in the air so she couldn't see any other side." Tr. at 93-94.
 {¶ 18} Appellant objected, noting Kelly Amos did not testify Rossiter was held straight up in the air, but Amos saw Rossiter high in the air. Immediately after the statement, the trial court cautioned the jury remarks made during closing arguments do not constitute evidence, and the jury must rely on its collective memories about what each witness said.
 {¶ 19} The test for prosecutorial misconduct is whether the prosecutor's comments and remarks were improper and if so, whether those comments and remarks prejudicially affected the substantial rights of the accused. State v. Lott (1990), 51 Ohio St.3d 160, certiorari denied (1990), 112 L.Ed.2d 596. In reviewing allegations of prosecutorial misconduct, it is our duty to consider the complained of conduct in the context of the entire trial. Darden v. Wainwright (1986), 477 U.S. 168. The prosecution is entitled to a certain degree of latitude in its closing remarks. Lott, supra at 165. Generally, the state may comment freely on "what the evidence has shown and what reasonable inferences may be
 {¶ 20} drawn therefrom." Id., quoting State v. Stephens (1970),24 Ohio St.2d 76, 82. However, prosecutors may not invade the realm of the jury by, for example, stating their personal beliefs regarding guilt and credibility, or alluding to matters outside of the record. State v.Smith (1984), 14 Ohio St.3d 13, 14.
 {¶ 21} A review of the transcript reveals the prosecutor's statement Amos testified Rossiter was held straight up in the air was a mischaracterization of Amos' actual testimony. Specifically, Amos testified, "the next thing I knew . . . Ashley was up in the air . . . in the front of the gentlemen and she was basically thrown to the cement of the parking lot . . . As far as how she was picked up, I don't what know what part of the body was picked up . . . I know that she was very high up in the air, you know, above the vehicles, and then the next thing I knew she just kind of bounced off of the cement of the parking lot." Tr. at 41. Although the prosecutor's characterization may have been technically inaccurate, we cannot find prosecutorial misconduct unless we determine the remarks and comments prejudicially affected the substantial rights of appellant. Given the ample evidence presented to the jury to establish appellant's guilt, coupled with the trial court's cautionary instruction, we cannot say appellant would not have been convicted but for the alleged improper comment of the prosecutor. We find appellant was neither prejudiced nor prevented from having a fair trial. Additionally, the trial court did not abuse its discretion in overruling appellant's objection to the prosecutor's rebuttal closing.[1]
 {¶ 22} Appellant's first and second assignments of error are overruled.
 III {¶ 23} In his third assignment of error, appellant raises an ineffective assistance of counsel claim. Specifically, appellant asserts trial counsel was ineffective for failing to raise a second objection to a second comment made by the prosecutor during rebuttal closing argument, stating Kelly Amos' testimony corroborated the testimony of Rossiter and Stokes.
 {¶ 24} The standard of review of an ineffective assistance of counsel claim is wellestablished. Pursuant to Strickland v. Washington (1984),466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 673, in order to prevail on such a claim, the appellant must demonstrate both (1) deficient performance, and (2) resulting prejudice, i.e., errors on the part of counsel of a nature so serious that there exists a reasonable probability that, in the absence of those errors, the result of the trial court would have been different. State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373; State v. Combs, supra.
 {¶ 25} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley, 42 Ohio St.3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel'ss conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 26} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Bradley, supra at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.
 {¶ 27} Assuming, arguendo, trial counsel's failure to object fell below an objective standard of reasonable representation, we find appellant cannot satisfy the second prong of the Strickland test given the ample evidence supporting the jury's verdict.
 {¶ 28} Appellant's third assignment of error is overruled.
 {¶ 29} The judgment of the Licking County Municipal Court is affirmed.
By: Hoffman, P.J., Wise, J. and Edwards, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Licking County Municipal Court is affirmed. Costs assessed to appellant.
[1] Because appellant's trial counsel objected, the plain error standard is not applicable to our review.