CALLAHAN, J., DISSENTING.
 

 {¶ 55} I respectfully dissent from the majority's resolution of Mr. Raider's second assignment of error. As noted by the majority, the defense presented in this case was that the shooting was the result of an accidental discharge when the gun was dropped. Given that context and reviewing the entire trial, I would find that the information about the gun being dropped 14 times without discharging that was disseminated to the jury through the prosecutor's improper question prejudicially affected Mr. Raider's substantial rights.
 

 {¶ 56} First, even though defense counsel objected midway through the offending question, the prosecutor, who surely knew better than to continue talking after the objection, pushed forward repeating the number of times the gun allegedly had been dropped. Thus, he made certain the jury heard that the gun was dropped "some 14 times, and it didn't go off."
 

 {¶ 57} Second, the prosecutor's "question" was not a question at all. Rather, it amounted to unchallenged testimony about an issue that was at the very heart of the matter in this case, namely whether Mr. Raider's Sig Sauer was capable of accidentally discharging if dropped. The defense argued that any "tests that the State made should be subject to cross-examination." Answers to questions such as who was the "we" who dropped the gun, whose Sig Sauer was dropped, under what conditions was it dropped, and in what condition was the Sig Sauer at the time it was dropped, never reached the jurors' ears because defense counsel was unable to conduct a cross-examination on the many issues contained within the prosecutor's "question."
 

 {¶ 58} The prosecutor, in effect, told the jury that Mr. Raider's defense of accident was an impossibility 14 times over. In view of the fact that "improper suggestions, insinuations, and * * * assertions of personal knowledge" by the prosecution "are apt to carry much weight against the accused when they should properly carry none,"
 
 Berger v. United States
 
 ,
 
 295 U.S. 78
 
 , 88,
 
 55 S.Ct. 629
 
 ,
 
 79 L.Ed. 1314
 
 (1935), the information interjected by the prosecutor deprived Mr. Raider of a fair trial. This was not a fact of "minor relevance," rather whether the gun could accidentally discharge was the central issue disputed by the parties in the present case.
 
 Contrast
 

 Miller
 
 ,
 
 2015-Ohio-279
 
 ,
 
 2015 WL 340936
 
 , at ¶ 29.
 

 {¶ 59} Notably, the State called four police officers and a firearms expert from BCI as witnesses-none of whom testified to any such test having been conducted. Surely, if the State had conducted an appropriate test, the results of which it felt were important enough to come before the jury, it could have prepared the requisite expert report and offered a witness to testify to the results, which then could have been subject to cross-examination. Such was not the case here. And it was inappropriate and prejudicial for the prosecutor, using the pretext of a "question," to put information before the jury that was not in evidence.
 
 See
 

 State v. Tilley
 
 , 8th Dist. Cuyahoga No. 96756,
 
 2012-Ohio-1533
 
 ,
 
 2012 WL 1142653
 
 , ¶ 24.
 

 {¶ 60} "[I]t is not enough that there be sufficient other evidence to sustain a conviction in order to excuse the prosecution's improper [question]. Instead, it must be clear beyond a reasonable doubt that, absent
 the prosecutor's [question], the jury would have found [Mr. Raider] guilty."
 
 See
 

 Smith
 
 ,
 
 14 Ohio St.3d at 15
 
 ,
 
 470 N.E.2d 883
 
 , citing
 
 United States v. Hasting
 
 ,
 
 461 U.S. 499
 
 , 510-511,
 
 103 S.Ct. 1974
 
 ,
 
 76 L.Ed.2d 96
 
 (1983). In the present case, I cannot find, beyond a reasonable doubt, that the jury would have found Mr. Raider guilty had there been no misconduct on the part of the prosecution.
 

 {¶ 61} Consequently, I would sustain Mr. Raider's second assignment of error and find his other assignments of error moot based on that resolution.